## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ALEX SMITH,** | § | |
| **for himself and all** | § | |
| **others similarly situated,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 1:15-cv-00747** |
| | § | |
| **STEADFAST MANAGEMENT** | § | |
| **COMPANY, INC.** | § | |
| **AND SIR STEINER RANCH** | § | |
| **APARTMENTS, LLC D/B/A** | § | |
| **MERITAGE AT STEINER RANCH,** | § | |
| | § | |
| *Defendants*. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Alex Smith ("Plaintiff"), for himself and all others similarly situated, files this Original Class Action Complaint and Jury Demand complaining of Defendant Steadfast Management Company, Inc. and Defendant SIR Steiner Ranch Apartments, LLC d/b/a Meritage at Steiner Ranch as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is an individual residing in Travis County, Texas, and for diversity purposes, is a citizen of Texas.

2.      Defendant Steadfast Management Company, Inc. ("Steadfast") is a California corporation with its principal place of business in Irvine, California that is registered to conduct business in the State of Texas.  For diversity purposes, Steadfast is a citizen of California.

Steadfast may be served with citation and process though its registered agent, CT Corporation System, 350 North St. Paul St., Ste. 2900, Dallas, Texas 75201.

3.     Defendant SIR Steiner Ranch Apartments, LLC d/b/a Meritage at Steiner Ranch ("Steiner") is a Delaware entity with its principal place of business in Irvine, California that is registered to conduct business in the State of Texas.  For diversity purposes, Steiner is a citizen of Delaware and California.   Steiner may be served with citation and process though its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

4.     Upon information and belief, Steadfast is and was, during all or part of the relevant time period, a corporation that purports to be the landlord of tenants at apartment houses in Texas, and during the relevant time period has provided management services for Meritage at Steiner Ranch apartments.

5.     Upon information and belief, Steiner was the legal titleholder of the Meritage at Steiner Ranch apartments during the relevant time period.  Upon information and belief, Steiner retained Steadfast, believed to be its affiliate, to serve as the management company and landlord of tenants for the Meritage at Steiner Ranch apartment property.

6.     This Court has personal jurisdiction over Defendants and subject matter jurisdiction over the causes of action as Plaintiff's statutory claims, exclusive of interest and costs, are within the jurisdictional amount of the Court.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b). Plaintiff's claims arose in the Western District of Texas, Austin Division.

8.     The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant (Steadfast) is a citizen of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and

costs, and there are more than 100 members of the class. The Court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Plaintiff and Defendants are citizens of different U.S. states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## II. INTRODUCTION AND FACTUAL BACKGROUND

9.     This case seeks to certify classes of current and former residential tenants of thousands of dwelling units at approximately 28 apartment communities in Texas [1] where Steadfast (a California-based property management company) is the owner or landlord.

10.     Plaintiff seeks to recover:

---

[1] *See* http://www.steadfastliving.com/communities/?filter=city&state=texas:

| | |
|---|---|
| Club at Summer Valley | Austin, Texas |
| Meritage at Steiner Ranch | Austin, Texas |
| Montecito | Austin, Texas |
| Terrace Cove Apartments | Austin, Texas |
| Trails at Buda Ranch | Buda, Texas |
| Arbors of Carrollton | Carrollton, Texas |
| Dawntree | Carrollton, Texas |
| Carrington Park at Huffmeister | Cypress, Texas |
| Waterford Place at Riata Ranch | Cypress, Texas |
| Mapleshade Park | Dallas, Texas |
| The Hills at Fair Oaks | Fair Oaks, Texas |
| The Belmont | Grand Prairie, Texas |
| Carrington Champion Forest | Houston, Texas |
| Carrington Place Luxury Apartments | Houston, Texas |
| Nob Hill | Houston, Texas |
| The Heights at 2121 | Houston, Texas |
| The Terraces on Brompton | Houston, Texas |
| Villas at Huffmeister | Houston, Texas |
| Echo at Katy Ranch | Katy, Texas |
| Villas of Kingwood | Kingwood, Texas |
| The Landing at Mansfield | Mansfield, Texas |
| Heritage Grand at Sienna Plantation | Missouri City, Texas |
| Grayson Ridge | North Richland Hills, Texas |
| Waterford on the Meadow | Plano, Texas |
| Montelena | Round Rock, Texas |
| Ashley Oaks | San Antonio, Texas |
| Rosemont at Olmos Park | San Antonio, Texas |
| Springmarc | San Marcos, Texas |

    a.      statutory remedies and damages for himself and putative classes for illegal water and wastewater fees charged to Texas tenants during the four years preceding the date this case was filed (and going forward from the date of filing until a judgment is signed);

    b.      damages for himself and the putative class for improper Pest Control Fees charged to Texas tenants over the past four years from the date this case was filed (and going forward from the date of filing until a judgment is signed).

## A.    STEADFAST AND STEINER

11.    Defendants Steadfast and Steiner, like most large apartment management companies operating in Texas, are members of the Texas Apartment Association ("TAA") and are licensed to use standardized residential lease forms and addendum forms promulgated by the TAA. This provides these landlords with consistency and predictability with regard to tenant leases, particularly when apartment properties are bought and sold, and leases are assigned to new owners and their management companies, which is a routine practice in the industry. As a result, all members of each Class who are or were tenants at Steadfast- and Steiner-owned or managed apartment properties during the class period were subject to uniform material contractual provisions.[2]

12.    Steadfast provides property management services for over 125 multifamily properties, totaling approximately 27,350 units, across 25 states."[3] Through its affiliates, such as Steiner, the Steadfast Companies state they collectively have "$2.5 billion in residential assets owned/or managed," "multifamily properties comprise the largest portion of our portfolio," and

---

[2] There are differences in lease terms that are non-material to this lawsuit, *e.g.*, rent rate, property name, term of lease, and certain amenities unique to a given property.

[3] http://www.steadfastcompanies.com/expertise/property-management.html

"Steadfast has been involved in the acquisition, refurbishment and/or management of more than 37,000 multifamily residential units over the past 20 years."[4]  In Texas, Steadfast is believed to be the owner or landlord/manager of approximately 28 apartment complexes across the state, with a total of approximately 10,000 units.[5]

13.     In Austin, Steadfast is believed to be the landlord of four apartment properties.[6] The remaining properties are geographically distributed across the state in markets such as Houston, Dallas, and San Antonio, including an apartment complex in Mansfield, Texas known as The Landing at Mansfield, which is discussed on more detail in § D. below.

14.     Steadfast has served and continues to serve as the owner or landlord of each of its apartment houses in Texas during all or part of the relevant time frame.  Upon information and belief, Steadfast's senior and executive management are proactively involved in supporting and reviewing property management such that Steadfast maintains control over management of its Texas apartment communities and directs the conduct of its onsite employees.  Steadfast's web-based property management system includes, on information and belief, the system used to bill and collect from tenants charges for water, wastewater, and pest control.  It is believed that Steadfast has used and continues to use its standardized forms, policies and practices to charge and collect from Plaintiff and other class members unauthorized monthly utility service fees and pest control fees.  Further, it is believed that Steadfast used its standardized utility billing system to charge and collect from Plaintiff and other class members unauthorized fees.  Thus, Steadfast's conduct at issue in this case affects Plaintiff and the putative class.

---

[4] http://www.steadfastcompanies.com/expertise/real-estate-and-development.html
[5] http://www.steadfastcompanies.com/portfolio-map/property-list.html
[6] *Id.*

15.     Similarly, Steiner, a legal titleholder of the complex, violated the Texas Water Code and has breached its contracts with Plaintiff and the Class.  Thus, Steiner's conduct at issue in this case affects both Plaintiff and the putative class.

**B.     P̲L̲A̲I̲N̲T̲I̲F̲F̲**

16.     Plaintiff is a residential tenant at Meritage at Steiner Ranch, an apartment property owned by Steiner.  Steadfast is the landlord of Meritage at Steiner Ranch, and Steiner is the legal titleholder.  The physical location of the apartment complex is 4500 Steiner Ranch Boulevard, Austin, Texas 78732.   In or about June 2014 Plaintiff and his wife, Taylor McKinney, signed a TAA form lease with TAA addendum forms with Meritage at Steiner Ranch for a term that ended in or about May 2015.  In May 2015, Plaintiff and his wife moved to a different unit at Meritage Steiner Ranch complex, and executed a new twelve month lease agreement, dated May 8, 2015, with a lease term of May 8, 2015 to May 7, 2016 ("Plaintiff's Lease," attached as **Ex. A**).

17.     In his lease agreements, Defendants represented to Plaintiff that water and wastewater would be billed to Plaintiff based on an "allocated" versus "submetered" basis.

18.     On his consolidated monthly utility bill prepared by a third-party provider called Conservice Management & Utility Billing ("Conservice"), Plaintiff was charged for:

        a.     Water Base Charge
        b.     Water
        c.     Sewer Base Charge
        d.     Sewer
        e.     Trash
        f.     Pest Control
        g.     Service Fee

Sample utility bills are attached as **Ex. B**.  Plaintiff has paid each of the charges and fees assessed.

C.   TEXAS WATER CODE

19.     "*Texas law does not allow property owners to profit from utility billing by adding extra fees or hidden charges to water and wastewater bills.*"[7] Years ago, water and wastewater costs typically were built into an apartment tenant's monthly rent payment. Water, like gasoline, used to be cheap. Not anymore. In recent years pervasive drought conditions and a growing population have increased the cost of water and made water conservation a priority in Texas. To offset rising costs and increase rental income, apartment house owners started charging tenants for water separately. In response, the Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Texas Water Code[8] ("the statute"), to specify how apartment house[9] owners[10] are allowed to pass-through their water and sewer utility costs to tenants, prevent landlords from using water utility billing as a separate profit center, and encourage conservation through submetering of multifamily properties.

20.     Generally, apartment houses built after 2003 are required to be equipped with submeters or individual meters for each dwelling unit to measure a tenant's water usage precisely.[11] This is a necessary prerequisite for owners to bill tenants for water and wastewater

---

[7] Texas Commission on Environmental Quality ("TCEQ") publications *Tenant Guide to Submetered Water or Wastewater Service* (GI-277) and *Tenant Guide to Allocated Water or Wastewater Service* (GI-276). *See* http://www.tceq.texas.gov/publications/gi/gi-277.html and http://www.tceq.texas.gov/publications/gi/gi-276.html.

[8] TEX. WATER CODE § 13.501 *et seq.*

[9] Under Subchapter M, Section 13.501(1) of the Texas Water Code "apartment house" means one or more buildings containing five or more dwelling units which are occupied primarily for nontransient use, including a residential condominium, whether renter or owner occupied, and having rental paid, if a dwelling unit is rented, at intervals of one month or longer.

[10] Under Section 13.501(5), "'Owner' means the legal titleholder of an apartment house … and any firm, or corporation that purports to be the landlord of tenants in the apartment house …."

[11] *See* TEX. WATER CODE § 13.502(b). "… [T]he owner of an apartment house … on which construction begins after January 1, 2003, shall provide for the measurement of the quantity of water, if any, consumed by the occupants of each unit through the installation of [submeters or individual meters]." If the owner provides low income housing or requested the public utility provider to install individual meters at every unit and the public utility refused, then the owner

charges and fees, and failure to comply is a violation triggering statutory remedies.[12]   Older properties built before January 2003 are given the option either to submeter or allocate water charges under a formula set forth in the statute and in rules promulgated originally by the Texas Commission on Environmental Quality ("TCEQ") and later transferred to the Public Utility Commission ("PUC") effective as of September 1, 2014.

21.     The statute is divided into two sets of rules, one for submetered properties and another for non-submetered properties. Generally, the statute prohibits an apartment house owner from imposing on the tenant any extra charge over and above the cost per gallon and any other applicable taxes and surcharges charged by the public utility to the owner.[13] The owner must send the tenant an itemized water bill and maintain adequate records regarding water billing for inspection by the tenant. In nonsubmetered properties, the owner additionally must set forth in the rental agreement the method of allocation used and the average monthly water bill for the previous year.[14]

22.     Regardless of whether the apartment house is submetered or if water bills are allocated to tenants using one of the formulas set forth in the PUC rules, an owner or landlord is prohibited from assessing or collecting a fee that exceeds the actual charges from the water and

---

must only install a plumbing system compatible with submeters or individual meters. Subsection (c) and (d) of Section 13.502. *See also* 16 TEX. ADMIN. CODE SECTION, Ch. 24.122.

[12] *See* TEX. WATER CODE § 13.505 ("In addition to the enforcement provisions contained in Subchapter K of this chapter, if an apartment house owner [defined in Section 13.501(5) to include management companies purporting to act as landlords over tenants] … violates a rule of the commission regarding submetering of utility service consumed exclusively within the tenant's dwelling unit or multiple use facility unit or nonsubmetered master metered utility costs, *the tenant may recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney's fees, and court costs from the owner or condominium manager.* However, an owner of an apartment house … is not liable for a civil penalty if the owner or condominium manager proves the violation was a good faith, unintentional mistake.").

[13] *See* TEX. WATER CODE § 13.503(b); *see also* 30 TEX. ADMIN. CODE § 291.125.

[14] TEX. WATER CODE § 13.5031(1), (2).

wastewater utility provider.  Such additional charges are a manufactured profit center which is expressly prohibited by the statute.  These types of fees are exactly the kind of surcharge the statute is designed to prohibit and deter through the use of hefty statutory remedies.

23.     The Texas Legislature added a separate enforcement provision to subchapter M of the Texas Water Code and its submetering and nonsubmetering rules.  Section 13.505 provides a private right of action for a tenant where he may recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney fees, and court costs from an owner who violates the statute.

**D.**     **VIOLATION OF § 13.502- NO RIGHT TO CHARGE BASED ON ALLOCATION METHODOLOGY/FAILURE TO PROVIDE SUBMETERS.**

24.     Steiner, as legal titleholder of the Meritage at Steiner Ranch apartment property where Plaintiff currently resides, and Steadfast, as the company purporting to act as landlord of tenants at that apartment property, have illegally billed water and wastewater charges and fees to tenants at the Meritage at Steiner Ranch property over the past four years.

25.     Steiner and Steadfast bill and collect from tenants, such as Plaintiff and the Class, using the allocation water billing method.  However, the allocation water billing method is not available to Steiner and Steadfast because construction of the Meritage at Steiner Ranch property, including the apartment house where Plaintiff resides (building 17), did not begin until many months after January 1, 2003.

26.     Under the express language of TEX. WATER CODE § 13.502(b), the "owner" of an "apartment house":[15]

---

[15] "Apartment house" means one or more buildings containing five or more dwelling units which are occupied primarily for nontransient use, including a residential condominium whether rented or owner occupied, and having rental paid, if a dwelling unit is rented, at intervals of one month or longer. Texas Water Code §13.501(1).

on which construction begins after January 1, 2003, **shall provide** for the measurement of the quantity of water, if any, consumed by the occupants of each unit through the installation of: (1) submeters, owned by the property owner or manager, for each dwelling unit or rental unit; or (2) individual meters, owned by the retail public utility, for each dwelling unit or rental unit.

Tex. Water Code § 13.502(b) (emphasis added).  Both Steiner, as the "legal titleholder of the complex," and Steadfast, as the "landlord of tenants," are "owners" for purposes of the statute, and are equally obligated to comply with the statute.  *See* Tex. Water Code § 13.501(5) (definition of "owner" includes both the "legal titleholder of an apartment house" and "any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house").

27.     Based on publicly available construction site plans and permits on file at the City of Austin, upon information and belief construction of all or most of the apartment houses comprising Meritage at Steiner Ranch did not commence until <u>after</u> January 1, 2003.   For example, the Site Plan for Apartment House No. 17 (Plaintiff's building) at Meritage at Steiner Ranch (f/k/a the Mansions at Steiner Ranch) reflects a site approval date of July 29, 2003. A true and correct copy of the filed and approved site plan is attached as **Ex. C**.  As site approval is a prerequisite to construction, construction could not have begun until some point after July 29, 2003.  A Steadfast website listing the Meritage at Steiner Ranch property confirms it was "built in 2004."[16]

28.     Because these "apartment houses" were built after January 1, 2003, Steiner and Steadfast, as "owners," were obligated to provide for each unit to be billed based on the rules for submetering.  Instead, over the past four years and continuing today, Steiner and Steadfast have

---

[16]  http://www.steadfastreit.com/properties-1/meritage-at-steiner-ranch.   Based on information and belief, a previous owner planned to build apartments at that location, and took steps to file initial applications in 2001; however, that project was shelved and a subsequent owner acquired the property and moved forward with the project in mid-2003.

billed and collected water and wastewater payments using the allocation method.  Such conduct violates TEX. WATER CODE § 13.502(b) and TEX. ADMIN. CODE § 24.122.

29.     On information and belief, neither Steiner nor Steadfast received approval pursuant to the terms of TEX. WATER CODE § 13.502(e) to use the allocation method of billing.

30.     On information and belief, Steiner and Steadfast never requested the public utility provider to install individual water meters at every unit at Meritage Steiner Ranch and charge Steiner and Steadfast with the cost of same, and Meritage Steiner Ranch is not a low-income housing project; therefore, TEX. WATER CODE § 13.502(c) and (d) do not apply.

31.     As a result, Steiner and Steadfast were required to install functioning submeters at each apartment house comprising Meritage Steiner Ranch as a prerequisite to charging tenants for water and wastewater, and must thereafter bill tenants using submeters and not using the allocation method.   Because Steiner and Steadfast did not comply with their statutory obligations, they are, and have been over at least the last four years, prohibited from charging any amount to the tenants for the delivery and use of water or wastewater.  _All_ such charges and fees constitute overcharges.

32.     On information and belief, Steadfast also serves as the landlord of tenants at another apartment property known as the Landing at Mansfield Apartments. Steadfast's website states that the Landing at Mansfield complex was built in 2006.[17]  Upon information and belief, Steadfast and the record titleholder, SIR SM Apartments, LLC (another Steadfast affiliate) utilize the allocation billing method for water just as was done for Meritage Steiner Ranch.   Upon information and belief, neither Steadfast nor SIR SM Apartments, LLC received approval pursuant to the terms of TEX. WATER CODE § 13.502(e) to use the allocation method of billing,

---

17

http://www.steadfastreit.com/downloads/property_highlights/mansfield_property_highlights.pdf at 1 ("Year Built: 2006")

and, on information and belief, this apartment property is not a low-income housing projection. As a result, Steadfast and SIR SM Apartments, LLC have charged illegal water and wastewater charges and fees to tenants at that The Landing at Mansfield since its acquisition in September 2013. This evidences that Steadfast and other Steadfast affiliates have and continue to bill prohibited water and wastewater charges to tenants at other Steadfast owned/managed properties in Texas, besides Meritage Steiner Ranch. Plaintiff seeks relief for all such similarly situated tenants in the class allegations in Section III. below.

33. Plaintiff brings this action for himself and all others similarly situated to recover relief specified under this provision of the statute. Standing under § 13.505 is conferred when the statute is violated irrespective of whether a plaintiff suffers actual damages. In this case, the moment Steiner charged and collected from Plaintiff and the members of the Class the prohibited water and wastewater charges, the statute was violated, giving rise to statutory relief. In addition to standing conferred by the statute when an illegal utility service fee is assessed, Plaintiff and each Class member paid the illegal fees; thus standing is conferred based on both Steiner's and Steadfast's assessment and collection of prohibited fees and surcharges. Steiner and Steadfast must refund all such charges to the affected of tenants along with treble statutory damages and one month's rent for each violation under the remedy provisions set forth in § 13.505.

E.    VIOLATION OF § 13.502- NO RIGHT TO CHARGE UTILITY SERVICE FEES

34. In his lease agreements, Plaintiff contracted to pay water based on an "allocated" versus "submetered" basis. Assuming that the Defendants could bill on an allocated basis, which Plaintiff contests, by statute Plaintiff could not be charged an amount in excess of his express allocated percentage for water and wastewater.

35. On his consolidated monthly utility bill prepared by a third-party provider called Conservice, Plaintiff was charged for:

   a.    Water Base Charge
   b.    Water
   c.    Sewer Base Charge
   d.    Sewer
   e.    Trash
   f.    Pest Control
   g.    Service Fee

36. Each month, Plaintiff has been assessed, and has paid, a "Service Fee" of $5.00. The "Lease Addendum for Trash Removal and Recycling Costs—Flat Fee" states that the parties agreed that $3.00 of that $5.00 "Service Fee" was attributable to a "nominal administrative fee" for processing and billing for trash service.[18]

37. There is no contractual basis to charge any additional service fee beyond the $3.00 trash service fee. Because water and wastewater have been billed to tenants such as Plaintiff using the allocation method, the Texas Water Code and accompanying rules prohibit any service fee whatsoever for water and wastewater billing. Similarly, the form leases used by Defendants provide no contractual basis to charge a "Service Fee" for utility, pest control or any other items billed. Moreover, the only utilities billed by Defendants are water, wastewater and trash. There is no basis in law or contract for Defendants to charge a billing service fee beyond $3.00 per month (for trash).

38. On the Conservice bills sent to Plaintiff (**Ex. B**), the service fee purportedly applies to "rent and trash." However, Conservice does not bill for rent. It bills for utilities only; therefore, it has no basis to label the $2.00 service fee as a "rent" service fee. Moreover, the form lease Plaintiff signed (**Ex. A**) does not permit any sort of service fee to bill him for rent each month.

---

[18] Trash was billed at the not-so-nominal rate of $31.00 per month.

39.     Accordingly, $2.00 of the "Service Fee" ($5.00 - $3.00 = $2.00) must be attributable to the only two other charges on the utility bill, which are water and wastewater (as all other appropriate charges are accounted for).   The excess fee is hereafter referred to as "Utility Service Fees."

40.     Sample utility bills are attached as **Ex. B**.  Plaintiff paid the excess Utility Service Fee that appears on the bills.

41.     The Utility Service Fee at issue is simply a made up fee.  It is not a fee or other charge the public utility company charged Steadfast or Steiner that was permissibly passed on to Plaintiff.

42.     In assessing and collecting the excessive Utility Service Fees, Steadfast and Steiner violated Subchapter M of the Texas Water Code and the accompanying PUC rules.

43.     Plaintiff brings this action for himself and all others similarly situated to recover relief specified under this provision of the statute. Standing under § 13.505 is conferred when the statute is violated irrespective of whether a plaintiff suffers actual damages. In this case, the moment Steadfast, as landlord, and Steiner charged and collected from Plaintiff and the members of the Class the prohibited Utility Service Fee, the statute was violated, giving rise to statutory relief.   In addition to standing conferred by the statute when an illegal utility service fee is assessed, Plaintiff and each Class member paid the illegal fees charged; thus standing is conferred based on both the assessment and collection of prohibited fees and surcharges.

C.     **PLAINTIFF IS CHARGED EXCESSIVE PEST CONTROL FEES, AND PAYS THEM**

44.     Pest control fees are a lucrative way for landlords and apartment owners to increase revenue and, to some extent, pass along costs to tenants.  By charging all or most tenants monthly pest control fees–even though actual pest treatments of tenants' apartment units

occur rarely, and certainly not monthly--a landlord is able to turn pest control into a profit center. Residential landlords and property owners have a statutory obligation to provide a habitable dwelling, but it is not clear that the cost of providing such a habitable dwelling should be, or can be, passed along to tenants at apartment complexes.  However, assuming *arguendo* they can be passed along, they must be provided for specifically in the tenant's lease agreement.  In other words, pest control fees incurred by property owners and landlords cannot be allocated and added to a tenant's utility bill as a matter of course.  Instead, pest control fees can only be charged to tenants, if at all, by specifically providing for that charge in the lease agreements and addenda.  Absent lease language specifying the parties' agreement as to how pest control fees are to be allocated to tenants, the owner/landlord must absorb those costs.

45.    Despite knowledge of how to contract for the apportionment of pest control fees, the TAA standardized form leases signed by Plaintiff and Class members during the class period omit any language authorizing pest control fees or containing a formula under which Steadfast and Steiner could or would allocate pest control fees to its tenants, as demonstrated by the lease signed by Plaintiff.  Despite this fact, Defendants have routinely charged and collected pest control fees from its Texas tenants on monthly utility bills over the past four years without any contractual or other legal basis.

46.    On his utility billing statements, Plaintiff was billed $1.00 for "Pest Control (Local Utility Provider)."  He has paid and continues to pay the $1.00 charge each month. Sample monthly utility bills from Steadfast and Steiner (prepared by Defendants' agent and third party biller Conserive) to Plaintiff containing the pest control fee is attached as **Ex. B**. However, Plaintiff's Lease does not provide that he will be billed monthly for pest control.

47.     Plaintiff's Lease does not authorize Steiner, through their billing agent Conservice, to charge monthly Pest Control Fees, nor provide any formula to be used to allocate such fees to Plaintiff.  Nonetheless, Steiner and its landlord Steadfast,, through their billing agent Conservice, charged Plaintiff monthly Pest Control Fees adopted unilaterally by Steiner that is outside the scope and terms of the form leases.

48.     Such assessment and collection of fees violates the parties' contractual agreement

### III.  CLASS ACTION ALLEGATIONS

49.     As set forth below, the proposed Classes satisfy the requirements for a class action.  The charges at issue in this case, believed to have been imposed on all members of the Classes, were assessed to and collected from Plaintiff by Steadfast and Steiner. The remaining members of the Class, as defined below, are current or former residential tenants of Steadfast-managed properties in Texas.  These properties are believed to be located across Texas in major metropolitan areas.  Because Defendants use their own form leases and addendum forms, and utilizes standardized computer systems and procedures to bill and collect charges from its residential tenants in Texas, it is likely class members have suffered the same or similar harm as Plaintiff with regard to the unlawful and extra-contractual fees.

50.     Plaintiff brings the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of himself and the three classes described below:

a.      "**Failure to Install Submeter Class**"

All persons who, within the four years preceding the date this case was filed, were:
(a) residential tenants of (i) Meritage Steiner Ranch or (ii) any other apartment house where Steiner or Steadfast were the legal titleholder or landlord in the State of Texas on which construction began <u>after</u> January 1, 2003; and
(b) where Steiner or its agents billed for water and wastewater and related charges using the allocation method as opposed to using water submeters.

The following persons are excluded from the Class:

(i)    persons who were tenants at a Steiner or Steadfast owned or managed apartment house on which construction began after January 1, 2003 and were billed for water and wastewater using the allocation method of billing as opposed to being billed using water submeters, under an exemption granted under TEX. WATER CODE § 13.502(e)

(ii)   the judge(s) assigned to this case and his or her staff;

(iii)  governmental entities;

(iv)   Steiner and its affiliates;

(v)    persons adjudged to be bankrupt; and

(vi)   persons who have previously released Steiner and Steadfast of the claims raised by this case.

b.    "**Utility Service Fee Class**":

All persons who, within the four years preceding the date this case was filed, were residential tenants of apartment properties in the State of Texas under written leases where Steadfast served as owner, landlord or manager, and who were charged and paid a Utility Service Fee.

The following persons are excluded from the Class:

(i)    persons who were not charged a Utility Service Fee that exceeded the statutory permissible fee for water and wastewater;

(ii)   the judge(s) assigned to this case and his or her staff;

(iii)  governmental entities;

(iv)   Steadfast and its affiliates;

(v)    persons adjudged to be bankrupt; and

(vi)   persons who have previously released Steadfast and Steiner of the claims raised by this case.

h.    "**Pest Control Fee Class**":

All persons who, within the four years preceding the date this case was filed, were residential tenants of apartment properties in the State of Texas under written leases where Steadfast served as owner, landlord or manager, and who were charged and paid a Pest Control Fee.

The following persons are excluded from the Class:

(i)    persons who were not charged a Pest Control Fee or had an express contractual provision or addendum authorizing the

> Pest Control Fee in an amount that did not exceed the actual charge;
>
> (ii)  the judge(s) assigned to this case and his or her staff;
>
> (iii) governmental entities;
>
> (iv) Steadfast and its affiliates;
>
> (v)  persons adjudged to be bankrupt; and
>
> (vi) persons who have previously released Steadfast and Steiner of the claims raised by this case.

51.  The members of the class are ascertainable.  The fees charged by Defendants to the Class are reflected in the tenant ledgers and the bills it or its third party billers sent Class members during the class period. As a result, Defendants are required by law to maintain all information needed to identify members of the Class, and any failure on their part to provide such information may not be used to oppose certification of the Class.  Under 16 TEX. ADMIN. CODE § 24.122(e) and (f) (formerly 30 Tex. Admin. Code Section 291.122(e) and (f)), Defendants "shall make … available for inspection by the tenant … (10) any … information necessary for a tenant to calculate and verify a water and wastewater bill…" and "[e]ach of the records required under subsection (e) … shall be maintained for the current year and the previous calendar year, except that all submeter test results shall be maintained until the submeter is permanently removed from service."  Therefore, by law the identities of class members are available and can be ascertained using objectively verifiable data from Defendants' electronic property management databases or those of its third party billers.

52.  Upon information and belief, Plaintiff is a member of each Class he seeks to represent, as detailed in the factual background and the claims for relief section of this complaint. The averments of fact and questions of law are common to each Class.

53.  Each of the three classes is believed to include well over one thousand members. Each Class is so numerous and spread out across the State of Texas and possibly elsewhere such that joinder of all members is impracticable.

54.     A Texas statute governs this action in regard to the water claims. Also, the claims of the Pest Control Fee Class are governed by the standardized lease agreements used by Steadfast and Steiner in carrying out their landlord, management and lessor duties, which leases are standardized forms promulgated by the Texas Apartment Association. These contracts are governed by Texas common law and the Texas Property Code.  The leases in question, including the addendum forms attached thereto, are common, standardized, and consistent among the Class in all material respects.

55.     The averments of fact and questions of law common to the members of each Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

    a.      The questions of law and fact are so uniform across each Class that there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

    b.      The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

    c.      The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member and not just those who can afford to bring their own actions; and

    d.      Steadfast and Steiner had actual knowledge of applicable Texas law, and their own lease agreements, yet acted deliberately and intentionally in charging its tenants prohibited fees to likely add millions of dollars to their bottom line on the backs of their tenants.  Many, if not all, of the Class members may never

discover Defendants' wrongful actions.  Thus, in the absence of a class action, Defendants likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

56.     Steadfast and Steiner engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members of each Class.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

57.     The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts.   In each case, Steadfast or Steiner (i) charged Class members prohibited fees in violation of Chapter 13 of the Texas Water Code and accompanying Public Utility Commission rules regarding what fees and surcharges may be assessed to tenants of apartment properties in Texas, and (ii) charged Class members prohibited fees in violation of their own form lease agreements.

58.     Class members are entitled to remedial relief under the Texas Water Code and have been damaged by Defendants' misconduct.  Class members have been overcharged and have paid excessive amounts, allowing Defendants to impermissibly profit by adding excess and illegal charges and fees to bills where Plaintiff and the Class had not contracted to pay such fees and where statutes expressly prohibited the billing and collection of such fees.

59.     Plaintiff's claims are typical of the claims of the other Class members for each Class. Plaintiff was overcharges or otherwise charged impermissible fees in each instance.

60.     Plaintiff will fairly and adequately protect the interests of each Class.  Plaintiff is familiar with the basic facts underlying the Class members' claims.

61.     Plaintiff's interests do not conflict with the interests of the other Class members they seek to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.

62.     Plaintiff's counsel have successfully prosecuted complex class actions, including two similar class action cases involving similar apartment tenant utility billing issues as in this case.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

63.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

64.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.  Defendants are required by law to maintain utility billing records needed to identify the members of the Class, and on information and belief, this information is stored in Steadfast's and Steiner's electronic property management databases or those of its agents, making the information relatively easy to retrieve.

65.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

66.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV. CLAIMS FOR RELIEF

**A.     TEXAS WATER CODE VIOLATIONS AND VIOLATIONS OF PUC RULES**

**1.     WATER AND WASTEWATER CHARGES AND FEES BILLED BY STEINER IN VIOLATION OF TEXAS WATER CODE § 13.502(B)**

**a.     CLAIM FOR VIOLATION OF TEXAS WATER CODE § 13.502(B) AND STATUTORY REMEDIES UNDER TEXAS WATER CODE § 13.505**

67.     Steiner and Steadfast charged Plaintiff and the Failure to Install Submeter Class allocated water and wastewater charges over the past four years that were prohibited under TEX. WATER CODE § 13.502(b) because construction of Meritage Steiner Ranch f/k/a The Mansions at Steiner Ranch began after January 1, 2003.  Despite the mandate of the statute and rules and the unavailability of any exceptions to the statute and rules, Steiner and Steadfast failed to install functioning submeters at each apartment unit. As a result, Steiner and Steadfast were not allowed to bill tenants at these apartment houses _any_ charges or fees for water and wastewater. Notwithstanding Steiner's and Steadfast's violation of § 13.502(b), Steiner and Steadfast or their agents billed tenants at Meritage Steiner Ranch for water and wastewater during the past four years using the allocation method of billing, which was prohibited.  TEX. WATER CODE § 13.502(b).

68.     Steiner's and Steadfast's business practices and its violations of the Texas Water Code were not the result of a good faith, unintentional mistake. Plaintiff and the Failure to Install

Submeter Class were charged prohibited water and wastewater charges and fees as part of Steiner's deliberate systematic leasing, utility allocation and billing, and collection policies for Meritage Steiner Ranch.

69.     As provided by TEX. WATER CODE § 13.505, Plaintiff and the Failure to Install Submeter Class seek recovery of statutory damages from Steiner and Steadfast equal to three times the amount of all overcharges, a civil penalty of one month's rent for each Class member for each violation, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

### b.     REQUEST FOR DECLARATORY JUDGMENT

70.     Plaintiff seeks a declaration that Steiner and Steadfast may not charge any water and wastewater charges or fees whatsoever to the Failure to Install Submeter Class until or unless they install functioning water submeters as required by law.

### c.     REQUEST FOR INJUNCTION

71.     Plaintiff seeks an injunction ordering Steiner and Steadfast and their agents to cease charging and collecting from the Failure to Install Submeter Class any water and wastewater charges and fees until it fully complies with § 13.502(b).

### d.     UNJUST ENRICHMENT

72.     Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein.

73.     Plaintiff and the Failure to Install Submeter Class agreed to pay Steiner and Steadfast only those amounts of money that were legally due under Texas law.  Steiner, Steadfast and their agents collected water and wastewater payments from the Class without disclosing the amounts collected were prohibited by law.  Steiner and Steadfast further threatened Plaintiff and

the Class with late charges if such illegal charges were not promptly made by Class Members. Because Steiner and Steadfast never disclosed to Plaintiff and the Class material information regarding the water and wastewater charges and fees, Plaintiff and the Class were put in an unfair position. As a result of such wrongful conduct, Steiner and Steadfast derived unjust and unfair profits by overcharging Plaintiff and the Class. Steiner's and Steadfast's conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent, and constitutes larceny. Steiner's and Steadfast's conduct was willful and malicious and intended to injure Plaintiff and the Class Members by depriving them of their property without legal basis.

74.    Steiner and Steadfast fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and Failure to Install Submeter Class members. Steiner's and Steadfast's retention of such monies served to benefit Defendants at the express detriment of Plaintiff and the Failure to Install Submeter Class. Defendants' retention of monies that should have been paid to Plaintiff and the Failure to Install Submeter Class under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and the Failure to Install Submeter Class.

75.    Steiner and Steadfast should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

e.    **CONSTRUCTIVE TRUST**

76.    In order to prevent Steiner and Steadfast from being unjustly enriched, Plaintiff asks the Court to impose a constructive trust on all funds in bank accounts or any other accounts

owned, in whole or in part, by Steiner and Steadfast.  Such funds in bank accounts were accumulated as a result of Steiner's and Steadfast's repeated illegal collection of water and wastewater charges from the Plaintiff and the Failure to Install Submeter Class.

### f.   MONEY HAD AND RECEIVED

77.    As a matter of equity, the illegally collected water and wastewater charges should be returned to the Plaintiff and the Failure to Install Submeter Class.

### 2.   EXCESSIVE UTILITY SERVICE FEES CHARGED BY DEFENDANTS IN VIOLATION OF TEX. WATER CODE §13.5031

### a.   CLAIM FOR VIOLATION OF TEXAS WATER CODE § 13.502-5031 AND STATUTORY REMEDIES UNDER TEXAS WATER CODE § 13.505

78.    Defendants charged Plaintiff and the Utility Service Fee Class for fees in excess of the statutory permissible amount due for water and wastewater. This practice is prohibited under Chapter 13 of the Texas Water Code and PUC Rules. *See e.g*., TEX. WATER CODE §§ 13.502-13.5031, 16 TEX. ADMIN. CODE SECTION, Ch. 24.

79.    In the case of all apartment properties in Texas where the owner or landlord allocates water and wastewater usage, the Texas Water Code and PUC Rules prohibit the owner or landlord from charging any service fees whatsoever for water and wastewater billing.  *See* § 13.5031(3)("an owner or condominium manager may not impose additional charges on a tenant in excess of the actual charges imposed on the owner").

80.    Defendants charged more than permitted by the statute and rules.  Defendants' violations of the Texas Water Code and PUC Rules were not the result of a good faith, unintentional mistake. Plaintiff and the Utility Service Fee Class were charged excessive and improper fees as part of Defendants' systematic leasing, utility allocation and billing, and collection policies for its properties in Texas.

81.     As provided by §13.505 of the Texas Water Code, Plaintiff and the Utility Service Fee Class seek recovery of statutory damages equal to three times the amount of all overcharges, a civil penalty of one month's rent for each Utility Service Fee Class member for each violation, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

### b.     REQUEST FOR DECLARATORY JUDGMENT REGARDING UTILITY SERVICE FEES

82.     Plaintiff seeks a declaration that Defendants may not charge a Utility Service Fee where they use the allocation method for water and wastewater billing, and that such charges violate Chapter 13 of the Texas Water Code and PUC Rules, specifically TEX. WATER CODE § 13.5031(3).

### c.     REQUEST FOR INJUNCTION REGARDING UTILITY SERVICE FEE

83.     Plaintiff seeks an injunction ordering Defendants to cease charging and collecting Utility Service Fees from Utility Service Fee Class members at their Texas apartment houses that use the allocation method of billing for water and wastewater, which TEX. WATER CODE § 13.5031(3).

### d.     UNJUST ENRICHMENT

84.     Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein.

85.     Plaintiff and Utility Service Fee Class members agreed to pay to the Defendants only those amounts of money that was legally due.  Defendants collected payments without disclosing that the amount collected was in excess of the statutory legal maximum.  Defendants threatened Plaintiff and the Utility Service Fee Class members with late charges if such illegal charges were not promptly made.  Because Defendants never disclosed to Plaintiff material

information regarding the legal maximum charge, Plaintiff was put in an unfair position. As a result of such wrongful conduct, Defendants derived unjust and unfair profits by overcharging Plaintiff and the class.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent, and constitutes larceny.  Defendants' conduct was done to willfully and maliciously injure Plaintiff and the Utility Service Fee Class members by depriving them of their property without legal basis.

86.     Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and Utility Service Fee Class members.  Defendants' retention of such monies served to benefit Defendants at the express detriment of Plaintiff and Utility Service Fee Class members.  Defendants' retention of monies that should have been paid to Plaintiff and Utility Service Fee Class members under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and Utility Service Fee Class members.

87.     Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

### e.    CONSTRUCTIVE TRUST

88.     In order to prevent Defendants from being unjustly enriched, Plaintiff asks the Court to impose a constructive trust on all funds in bank accounts or any other accounts owned, in whole or in part, by any Defendant.  Such funds in bank accounts were accumulated as a result of Defendants' repeated illegal collection Utility Service Fees.

### f.   MONEY HAD AND RECEIVED

89.     Plaintiff paid Utility Service Fees to Defendants.  Upon information and belief, Steadfast has a management agreement with other properties, and numerous other apartment owners to manage apartment complexes located in Texas.   Upon information and belief, Steadfast has authority to, among other things, (i) negotiate and execute leases on the owners' behalf; (ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

90.     Upon information and belief, as the management entity Steadfast routinely collected Utility Service Fees and placed them in a designated trust account, remitted the amounts due to Steadfast and the property owners of other Steadfast-managed properties, and retained the remainder for its own account.

91.     As a matter of equity, the illegally collected Utility Service Fees should be returned to Plaintiff and the Utility Service Fee Class members.  Because Steadfast acted in the capacity of an agent in the collection and distribution of the Utility Service Fees, Steadfast is also obligated to return the money in its possession that was taken from Plaintiff and the Utility Service Fee Class members.

## B.   PEST CONTROL FEES

### 1.   BREACH OF CONTRACT

92.     As set forth above, Steiner and its agents allocated, charged and collected from Plaintiff and the Pest Control Fee Class impermissible monthly Pest Control Fees not authorized by the form lease agreements using an allocation formula not provided for or even mentioned in

the Class members' leases. The standardized TAA lease and addendum forms used by Steiner for

Pest Control Fee Class members do not contractually allow Steiner to charge Pest Control Fees

or allocate pest control costs to Class members, and to collect the same from Class members,

including Plaintiff.  Plaintiff and the Class seek recovery of assessed and collected Pest Control

Fees during the class period.

93.     As provided by TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq.*, Plaintiff and the

Pest Control Fee Class seek recovery of their breach of contract damages, reasonable attorneys'

fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of

court.

### 2.     DECLARATORY JUDGMENT REGARDING PEST CONTROL FEES

94.     Plaintiff seeks a declaration that Steiner may not charge Pest Control Fees to the

Pest Control Fee Class in the absence of a signed lease addendum or lease agreement expressly

authorizing such fees and detailing the allocation and charging of such fees to tenants.

### 3.     REQUEST FOR INJUNCTION REGARDING PEST CONTROL FEES

95.     Plaintiff seeks an injunction ordering Steiner to cease charging and collecting Pest

Control Fees to the Pest Control Fee Class in the absence of contractual agreements allowing

Steiner to assess and collect such fees.

### 4.     UNJUST ENRICHMENT

96.     Plaintiff asserts this cause of action in the alternative to any other causes of action

stated herein.  Plaintiff and Pest Control Fee Class members agreed to pay to the Defendants

only those amounts of money that was legally due.  Defendants collected payments without

disclosing that the amount collected was in excess of the contractual legal maximum.

Defendants threatened Plaintiff and the Class with hefty late charges or possible eviction if such

illegal charges were not promptly paid.  Because Defendants never disclosed to Plaintiff material information regarding the legal maximum charge, Plaintiff was put in an unfair position. As a result of such wrongful conduct, Defendants derived unjust and unfair profits by overcharging Plaintiff and the class.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent, and constitutes larceny.  Defendants' conduct was done to willfully and maliciously injure Plaintiff and the Pest Control Fee Class by depriving them of their property without legal basis.

97.     Defendants fully appreciated the enrichment and benefit accorded to it by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and the Pest Control Fee Class.  Defendants' retention of such monies served to benefit Defendants at the express detriment of Plaintiff and Pest Control Fee Class.  Defendants' retention of monies that should have been paid to Plaintiff and Pest Control Fee Class under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and the Pest Control Fee Class.

98.     Plaintiff has no adequate remedy at law.  Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

### 5.   CONSTRUCTIVE TRUST

99.     In order to prevent Defendants from being unjustly enriched, Plaintiff asks the Court to impose a constructive trust on all funds in bank accounts or any other accounts held, owned, in whole or in part, by any Defendant.  Such funds in bank accounts were accumulated as

a result of Defendants' repeated illegal collection of Pest Control Fees from tens of thousands of their Texas tenants who comprise the Pest Control Fee Class.

### 6.   MONEY HAD AND RECEIVED

100.    Plaintiff paid Pest Control Fees to Defendants. Upon information and belief, Steadfast has a management agreement with Steiner and numerous other affiliated apartment owners to manage apartment complexes located in Texas. Also, on information and belief, Steadfast, through itself or related parties, owns some of the Texas apartment properties it manages. Upon information and belief, Steadfast has authority under its property management contracts to, among other things, (i) negotiate and execute leases on the owners' behalf; (ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for itself and the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

101.    Upon information and belief, Steadfast, as the management entity, routinely collected pest control fees and placed them in designated bank accounts under its control, and on a routine basis either retained all or part of those funds or remitted some or all of those funds to Steiner and the property owners of other Steadfast managed properties.

102.    As a matter of equity, the illegally collected Pest Control Fees should be returned to Plaintiff and the Pest Control Fee Class. Because Steadfast acted in the capacity of an agent in the collection and distribution of the pest control fees, Steiner is also obligated to return any such money in its possession that was taken from Plaintiff and the Pest Control Fee Class.

## V.  JURY DEMAND

103.    Plaintiff asserts his right under the Seventh Amendment to the U.S. Constitution and demand, in accordance with FED. R. CIV. P. 38, a trial by jury on all disputed material fact issues.

## VI.  REQUEST FOR RELIEF

104.    Plaintiff seeks an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and upon final hearing that the Court enter a judgment against Defendants for: (a) statutory damages equal to three times the amount of all illegal fees and surcharges charged to the Class by Steadfast and Steiner; (b) statutory penalties equal to one month's rent for each class member for each statutory violation; (c) compensatory damages; (d) prejudgment and post judgment interest at the highest rate allowed by law; (e) reasonable attorneys' fees; (f) court costs; and (g) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to declaratory relief, injunctive relief, unjust enrichment relief, and relief under the doctrine of money had and received.

Respectfully submitted,

By:  */s/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Fax

R. MARTIN WEBER, JR.
Texas Bar No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
Telephone: (713) 651-1771
Facsimile: (713) 651-1775

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Fax

***ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS***