**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALEX SMITH,** | § | |
| **for himself and all** | § | |
| **others similarly situated,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 1:15-cv-00747-RP** |
| | § | |
| **STEADFAST MANAGEMENT** | § | |
| **COMPANY, INC.** | § | |
| **AND SIR STEINER RANCH** | § | |
| **APARTMENTS, LLC D/B/A** | § | |
| **MERITAGE AT STEINER RANCH,** | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Alex Smith ("Plaintiff"), for himself and all others similarly situated, files this Third Amended Class Action Complaint and Jury Demand complaining of Defendant Steadfast Management Company, Inc. and Defendant SIR Steiner Ranch Apartments, LLC d/b/a Meritage at Steiner Ranch (collectively "Defendants") as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is an individual residing in Travis County, Texas, and for diversity purposes, a citizen of Texas.

2.     Defendant Steadfast Management Company, Inc. ("Steadfast") is a California corporation with its principal place of business in Irvine, California that is registered to conduct business in the State of Texas.  For diversity purposes, Steadfast is a citizen of California. Steadfast has entered an appearance through its counsel of record.

3.      Defendant SIR Steiner Ranch Apartments, LLC d/b/a Meritage at Steiner Ranch ("Steiner") is a Delaware entity with its principal place of business in Irvine, California that is registered to conduct business in the State of Texas.  For diversity purposes, Steiner is a citizen of Delaware and California.  Steiner has entered an appearance through its counsel of record.

4.      Steiner and Steadfast (collectively referred to as "Defendants") are and were, during all or part of the relevant time period, statutory "owners" for purposes of the claims asserted under Chapter 13, Subchapter M of the Texas Water Code because each of them is a "firm or corporation that purports to be the landlord of tenants in the Steadfast-branded apartment house[s]" in Texas during the class period. Steadfast was and continues to be the actual or purported landlord of tenants at the Meritage at Steiner Ranch apartment house where Plaintiff resided.

5.      Upon information and belief, Steiner was the legal titleholder of the apartment complex located at 4500 Steiner Ranch Boulevard, Austin, Texas 78732 during the relevant time period, making it an "owner" under TEX. WATER CODE § 13.501(5).  Upon information and belief, Steiner retained Steadfast, believed to be its affiliate, to serve as the full-service management company and as the landlord of tenants or purported landlord of tenants for the Meritage at Steiner Ranch apartment house where Plaintiff resided.

6.      This Court has personal jurisdiction over Defendants and subject matter jurisdiction over the causes of action as Plaintiff's statutory claims, exclusive of interest and costs, are within the jurisdictional amount of the Court.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  Plaintiff's claims arose in the Western District of Texas, Austin Division.

8.     The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant is a citizen of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class.

## II. INTRODUCTION AND BACKGROUND

9.     This case seeks to certify classes of current and former residential tenants of (a) Meritage Steiner Ranch Apartments, a 503-unit property in Austin, Texas owned and managed by Defendants and (b) other apartment properties in Texas owned and managed by Defendants similarly charged improper billing service fees for water and sewer utility services and/or extra-contractual rent billing fees and/or extra-contractual pest control fees. Defendants own or act as landlord of thousands of dwelling units at approximately 28 apartment communities in Texas.[1]

10.     Plaintiff seeks to recover statutory remedies and damages for himself and the putative class for charging and collecting unlawful water/wastewater surcharges during the four years preceding the date this case was filed (and going forward from the date of filing until a judgment is signed).  Alternatively, Plaintiff, for himself and the Class, seeks to recover for breach of contract damages for unauthorized rent billing service fees and excessive rent beyond the amounts specified in the leases; and/or for breach of contract damages for for Defendants' assessing and collecting of unauthorized pest control fees.

_____

[1] *See* Appendix 1.

**A.** **STEADFAST OWNS APARTMENTS AND SERVES AS THE PURPORTED LANDLORD OF OTHER APARTMENT COMPLEXES IN TEXAS.**

11.     Steadfast Companies is "a vertically integrated, multifaceted real estate owner, operator and manager[.]"[2]  "Steadfast Companies has acquired, developed and managed in excess of $4.5 billion of real estate, including over 30,000 apartment units[.]"[3]  Steadfast provides property management services for over 140 multifamily properties across 19 states.[4] Through its affiliates, such as Steiner, Steadfast Companies states that with "over $4.0 billion in residential assets owned/or managed, our multifamily properties comprise the largest portion of our portfolio. Steadfast has been involved in the acquisition, refurbishment and/or management of more than 37,000 multifamily residential units over the past 20 years."[5]  In Texas, Steadfast is believed to be the owner or landlord/manager of approximately 35 apartment complexes across the state, with a total of approximately 10,000 units.[6]  It is one of the largest apartment owning and operating conglomerates in the U.S., owning and operating, through a complex series of affiliates and subsidiaries.

12.     Defendant Steadfast is the apartment house management-arm of the Steadfast Companies providing comprehensive, full-service landlord services to its affiliates holding legal title to Steadfast Companies apartment properties, including Steiner.  Defendant Steadfast is the primary operating entity within the Steadfast Companies' umbrella, and is responsible for running all operations at the apartment houses owned by the Steadfast Companies' enterprise.

13.     Steadfast Companies, for purposes of its investments, uses affiliated entities to purchase and hold record title to specific apartment properties in its portfolio.  In this case, the

---

[2] **Ex. D**
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

Steadfast Companies formed Steadfast REIT Investments, LLC to sponsor the publicly traded (now closed to investment) Steadfast Income REIT, Inc., and formed Steadfast Income REIT Operating Partnership, L.P. as the operating partnership of the REIT.[7]

14.     Steiner, a subsidiary of Steadfast Income REIT, Inc., was formed in 2013 as a shell entity to serve as the legal titleholder to the apartment house where Plaintiff Smith resided.[8] Defendant Steadfast, the entity with the employees to manage and serve as the purported landlord of tenants at the apartment houses, through a management agreement took over all the management and operations at the apartment houses.[9] Decisions regarding the operations of the apartment houses are made by Defendant Steadfast. While Defendant Steadfast may suggest it is an "agent," in reality it is Defendant Steadfast that makes the decisions, and calls the shots at the apartment houses. The shell titleholder entities lack actual input into the actual operation of the complexes, as one would expect from this corporate structure. In 2015 alone, Defendant Steadfast was paid and/or reimbursed in excess of $26,000,000 for providing management services and serving as the purported landlord of tenants at the apartment houses.[10]

15.     In its apartment operations, Defendant Steadfast employs leasing consultants, leasing coordinators, managers, bookkeepers, and others. The salary and benefits for those persons are reimbursed by Steadfast Income REIT, Inc.[11] Any tenant in Texas living at a Steadfast-managed apartment property deals with Defendant Steadfast as the purported landlord.

---

[7] **Ex. E** (Steadfast Income REIT, Inc. 10-K)
[8] **Ex. J** (Steadfast Income REIT, Inc. 8-K), at 4 ("On August 6, 2013, the Company, through SIR Steiner Ranch Apartments, LLC ("SIR Steiner"), an indirect, wholly-owned subsidiary of the Company, acquired from a third party seller a fee simple interest in a 502-unit multifamily residential community located in Austin, Texas, commonly known as Monterone at Steiner Ranch (the "Steiner Property"). SIR Steiner acquired the Steiner Property for an aggregate purchase price of $80,000,000, excluding closing costs.")
[9] **Ex. E** at 78.
[10] *Id.*
[11] *Id.*

Steadfast performs all landlord services, duties and functions at Steadfast-branded apartment properties in Texas (and elsewhere, on information and belief).

16.     By way of example only, Defendant Steadfast's personnel perform the following functions as the purported landlord of apartment properties it manages, including the properties in Texas where Plaintiff resided:

- Lease, market and advertise the apartment house
- Greet, assist, and qualify prospective residents
- Give property tours, answer telephone calls, and prepare application paperwork
- Communicate leases and community policies
- Maintain records of rental levels of comparable properties by preparing regular market surveys
- Take maintenance service requests from residents and follow-up on service calls
- Process move-ins and move-outs following company policies and procedures and guidelines established by federal, state, and local agencies
- Assist with supervision of all vacant apartment turnover procedures
- Perform annual unit inspections.
- Collect rents and control delinquencies
- Serve legal documents and process and supervise all eviction proceedings.
- Assist in the collection of all monies due to the Community (rents, damages, late fees, etc.) and the preparation of receipts
- Inspect the property on a regular basis and report all safety hazards, property damage, and needed repairs to maintenance staff
- Follow up on repairs to verify completion and compliance with OSHA, property insurance companies, government agencies, and company safety policies and risk management procedures.

**Ex. F**; **Ex. G**; **Ex. H**.  In sum, Defendant Steadfast trains and expects its office personnel at the apartment houses, to act as purported landlords of tenants.  Moreover, Defendant Steadfast sets the policies (the rules) with which the tenants at the apartment houses must comply and enforces those rules as the landlord. The "Steadfast Management Company, Inc. 'Community Policies and Recreation Facility Rules'" are incorporated as "part of [Plaintiff's] lease" in Paragraph 19.1 of the lease. **Ex. I**.

17.     While Steadfast has ultimate responsibility and control over the landlord function, including billing and collecting charges for water and wastewater utilities at the apartment

houses, Steadfast does not handle the billing of water/wastewater and trash utilities to its tenants internally. Instead, utility billing is handled separately using a third-party biller hired by Defendants that specializes in billing apartment tenants around the country for their allocated costs of water and sewer charges incurred by landlords like Meritage at Steiner Ranch. Plaintiff and the class were billed for the allegedly unlawful water/wastewater surcharges (discussed below in detail) by Steadfast through a third-party billing agent, all payments were collected by Steadfast through a third-party billing agent, and at least a portion of the fee was retained by Steadfast.

18.     Defendants, like most large apartment management companies operating in Texas, use standardized billing practices and residential lease forms. As a result, upon information and belief, all members of the Class who are or were tenants at apartment houses in Texas during the class period where Defendants are or were "owners" under the relevant Texas Water Code Statute were subject to uniform material billing practices. Also, Defendants are members of the Texas Apartment Association ("TAA") and are licensed to use standardized residential lease forms and addendum forms promulgated by the TAA.  This provides these landlords with consistency and predictability with regard to tenant leases, particularly when apartment properties are bought and sold, and leases are assigned to new owners and their management companies, which is a routine practice in the industry.  As a result, all members of the Class who are or were tenants at Defendant-owned or managed apartment properties during the class period were subject to uniform material contractual provisions.[12]

19.     In each of its TAA form leases, including Plaintiff's lease, Steadfast (1) sets forth the amount due each month as "rent" (a defined amount), and (2) directs each tenant to pay her

_____

[12] There are differences in lease terms that are non-material to this lawsuit, *e.g.*, rent rate, property name, term of lease, and certain amenities unique to a given property.

rent each month either by delivering payments to Steadfast on-site management offices or using Steadfast's online payment portal.

20.    On information and belief, Steadfast uses affiliated entities to purchase and hold record title to specific apartment properties in its ownership portfolio.

21.    In Austin, Steadfast is believed to be the landlord of four apartment properties.[13] The remaining properties are geographically distributed across the state in markets such as the Greater Houston area, the DFW Metroplex, and San Antonio.

22.    Steadfast has served and continues to serve as the landlord of tenants at each of its apartment houses in Texas during all or part of the relevant time frame.  Upon information and belief, Steadfast's senior and executive management are proactively involved in supporting and reviewing property management such that Steadfast maintains control over management of its Texas apartment communities and directs the conduct of its onsite employees.  Steadfast has used and continues to use its standardized forms, policies and practices to charge and collect from Plaintiff and other class members unauthorized monthly utility service fees.  Further, it is believed that Steadfast used its standardized utility billing system to charge and collect from Plaintiff and other class members unauthorized fees.  Thus, Steadfast's conduct at issue in this case affects Plaintiff and the putative class.

23.    As reflected above, Steadfast has ultimate responsibility and control over the landlord functions of billing and collecting charges for rent, utilities, and other charges at apartment houses. Plaintiff and the class were billed for the allegedly unlawful water utility surcharges (discussed below in detail) by Steadfast (either directly or through a third-party billing agents used by Greystar) and the payments were, at least in part, by Steadfast.

---

[13] *Id.*

24.     Steadfast is an "owner" in this case steadfast is a corporation or firm "purporting to be the landlord of tenants" in the class, including Plaintiff.  These capacities both satisfy the definition of "owner" in Section 13.501(4) of the Texas Water Code. Steadfast bears legal responsibility for the statutory claims asserted in this case on behalf of the class.

25.     Steiner holds legal title to the apartment property in Austin, Texas where Plaintiff resided.  As a result, Steiner bear legal responsibility for the statutory claims asserted in this case on behalf of class members, including Plaintiff, who resided at the Meritage at Steiner Ranch apartment house.

## B.     TEXAS WATER CODE

26.     "*Texas law does not allow property owners to profit from utility billing by adding extra fees or hidden charges to water and wastewater bills.*"[14] Years ago, water and wastewater costs typically were built into an apartment tenant's monthly rent payment. Water, like gasoline, used to be cheap. Not anymore. In recent years, pervasive drought conditions and a growing population have increased the cost of water and made water conservation a priority in Texas. To offset rising costs and increase rental income, apartment house owners started charging tenants for water separately. In response, the Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Texas Water Code[15] ("the Water Code Statute"), to specify how apartment house[16] owners[17] are allowed to pass-through their water and sewer utility costs to tenants,

---

[14] Texas Commission on Environmental Quality ("TCEQ") publications *Tenant Guide to Submetered Water or Wastewater Service* (GI-277) and *Tenant Guide to Allocated Water or Wastewater Service* (GI-276). *See* http://www.tceq.texas.gov/publications/gi/gi-277.html and http://www.tceq.texas.gov/publications/gi/gi-276.html.

[15] TEX. WATER CODE § 13.501 *et seq.*

[16] Under Subchapter M, TEX. WATER CODE § 13.501(1), "apartment house" means one or more buildings containing five or more dwelling units which are occupied primarily for nontransient use, including a residential condominium, whether renter or owner occupied, and having rental paid, if a dwelling unit is rented, at intervals of one month or longer.

prevent landlords from using water utility billing as a separate profit center, and encourage conservation through submetering of multifamily properties. Under the Water Code Statute, the "utility commission" was authorized and directed to "adopt rules and standards" under which utility service costs could be passed along to tenants. TEX. WATER CODE § 13.503(b), 13.5031.

27.    In accordance with that directive, the Texas Commission for Environmental Quality ("TCEQ") promulgated rules. Administrative responsibility was later transferred to the Public Utility Commission of Texas ("PUC") in September 2014. The PUC rules are set forth in Chapter 23, Subchapter H of the Texas Administrative Code, TEX. ADMIN. CODE § 24.121 *et seq.* (hereafter "PUC Rules").

28.    The Water Code Statute and the PUC Rules contain rules related to submetered properties and non-submetered properties. The Water Code Statute makes clear an apartment owner may not add its own fees and surcharges for water/wastewater service and billing. It may only pass on the actual water and wastewater costs that are billed by the utility using one of the permitted formulas (submetered or allocated billing methods). Water costs assessed in contravention of the Water Code Statute and PUC Rules constitute impermissible overcharges:

> except that as provided by this section, an owner ... **may not impose additional charges on a tenant in excess of the actual charges imposed on the owner** … for utility consumption by the ... apartment house ...

TEX. WATER CODE § 13.5031(3) (emphasis added).

> … In addition to other appropriate safeguards for the tenant, the rules shall require that, except as provided by this section, **an apartment house owner**, manufactured home rental community owner, multiple use facility owner, or condominium manager **may not impose on the tenant any extra charges, over and above the cost per gallon and any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager**, and that the rental unit or apartment house owner or manager shall maintain adequate

---

[17] Under Section 13.501(5), "'Owner' means the legal titleholder of an apartment house … and any firm, or corporation that purports to be the landlord of tenants in the apartment house …."

records regarding submetering and make the records available for inspection by the tenant during reasonable business hours.

TEX. WATER CODE § 13.503(b) (emphasis added).

29.     The Rules adopted by the Public Utility Commission to effectuate the Water Code Statute further provide:

(a) **Purpose and scope**. The provisions of this subchapter are intended to establish a comprehensive regulatory system to **assure that the practices involving submetered and allocated billing of dwelling units and multiple use facilities for water and sewer utility service are just and reasonable and include appropriate safeguards for tenants.**

16 TEX. ADMIN. CODE § 24.121(a) (emphasis added).

(a) **Prohibited charges**. **Charges billed to tenants for submetered or allocated utility service may only include bills for water or wastewater from the retail public utility** and must not include any fees billed to the owner by the retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees.

16 TEX. ADMIN. CODE § 24.124(a) (emphasis added). "Owners" may pass on water costs to tenants but *may not add* their own fees and surcharges to the bill. Water costs assessed in contravention of the Water Code Statute and Rules are impermissible.

30.     The PUC Rules expressly state that any efforts to waive the provisions of the Rules are unenforceable. TEX. ADMIN. CODE § 24.123(e) ("**Waiver of tenant rights prohibited. A rental agreement provision that purports to waive a tenant's rights or an owner's responsibilities under this subchapter is void**.")

31.     The Texas Legislature added a separate enforcement provision unique to subchapter M of the Texas Water Code and its submetering and nonsubmetering Rules. Section 13.505 provides a private right of action as follows:

In addition to the enforcement provisions contained in Subchapter K of this chapter, **if an apartment house owner … violates a rule of the commission regarding submetering of utility service** consumed exclusively within the tenant's dwelling unit or multiple use facility unit **or nonsubmetered master metered utility costs, the tenant may recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney's fees, and court costs from the owner** ... However, an owner of an apartment house … is not liable for a civil penalty if the owner or condominium manager proves the violation was a good faith, unintentional mistake.

TEX. WATER CODE § 13.505 (emphasis added).

32.     Trebling of overcharges is automatic once a violation is established. To avoid the additional civil penalty of one month's rent, the owner must affirmatively plead and prove the overcharge was the result of an "unintentional, good faith mistake."

33.     Steadfast, as the "purported landlord of tenants" at Texas properties where it is the manager, is an owner" for purposes of the statute, with both the obligation to comply with the statute and liability for any violations.   *See* TEX. WATER CODE § 13.501(5) (definition of "owner" includes both the "legal titleholder of an apartment house" and "any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house").

34.     The Water Code defines "owner" to include any company "that purports to be the landlord."  The Texas Water Code definition of "owner" states that an "owner" is any entity that is:

the legal titleholder of an apartment house, manufactured home rental community, or multiple use facility and any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house, manufactured home rental community, or multiple use facility.

TEX. WATER CODE § 13.501(5).   The definition contains the conjunction "and," clearly contemplating that one "apartment house" could have two or more "owners."  As constructed by the Legislature, "owners" include: (i) the "legal titleholder" of an apartment complex **and**

(ii) any individual, firm, or corporation that *purports to be* the landlord of tenants in the apartment house."

35.     "Landlord" is not defined in the Water Code Statute.  Both nationally[18] and in Texas, the definition of "landlord" is expansive, and routinely includes agents and management companies.

36.     Two separate sections of the Texas Property Code define "landlord" broadly (and in line with national usage) to expressly include the "managing company" and "managing agent":

> **"Landlord" means** a dwelling owner, lessor, sublessor, **management company, or managing agent, including an on-site manager**.

TEX. PROP. CODE § 92.151(7) (emphasis added).  This subsection of the Property Code expressly applies to apartments.  TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").  In a section involving manufactured home communities, a similarly broad definition of "landlord" is used:

---

[18] *E.g.,* Colorado (C.R.S.A. § 38-12-502(3) "Landlord" means the owner, manager, lessor, or sublessor of a residential premises."); Delaware (25 Del.C. § 5141 "(15) "Landlord" shall mean: a. The owner, lessor or sublessor of the rental unit or the property of which it is a part and, in addition, shall mean any person authorized to exercise any aspect of the management of the premises...b. Any person held out by any landlord as the appropriate party to accept performance, whether such person is a landlord or not; or c. Any person with whom the tenant normally deals as a landlord"); Hawaii (HRS § 521-8 "Landlord" means the owner, lessor, sublessor, assigns or successors in interest of the dwelling unit or the building of which it is a part and in addition means any agent of the landlord"); Michigan (M.C.L.A., Landlord and Tenant Relationships, 554.601, Sec. 1, (c) "Landlord" means the owner, lessor, or sublessor of the rental unit or the property of which it is a part and, in addition, means a person authorized to exercise any aspect of the management of the premises..."); Mississippi (Miss. Code Ann. § 89-8-7 (d) "Landlord" means the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, or the agent representing such owner, lessor or sublessor"); New Hampshire (N.H. Rev. Stat. § 540-A:1, I "Landlord" means an owner, lessor or agent thereof who rents or leases residential premises ... "); Washington (RCWA 59.18.030 (11) "Landlord" means the owner, lessor, or sublessor of the dwelling unit or the property of which it is a part, and in addition means any person designated as representative of the owner, lessor, or sublessor including, but not limited to, an agent, a resident manager, or a designated property manager.")

In this chapter: (1) "Landlord" means the owner or **manager** of a manufactured home community **and includes an employee or agent** of the landlord.

TEX. PROP. CODE § 94.001.

37.     The American Heritage Dictionary defines "landlord" as follows:

1. One that owns and rents land, buildings, or dwelling units.

2. A man who runs a rooming house or an inn; an innkeeper.[19]

Any fair reading of the word "landlord" as ordinarily defined and used around the U.S. includes a contract manager or management company that acts as the leasing agent and manager.

38.     These broad definitions comport with the manner in which many states define "landlord." Using the definition of "landlord" contained in TEX. PROP. CODE § 92.151(7), TEX. PROP. CODE § 94.001, or the generally accepted definition, Greystar--the management company and leasing agent that employs the on-site managers and office personnel at the apartment houses and the party that makes the rules for the apartment house community--is assuredly a "landlord" or at the very least, "purports to act as a landlord."

39.     As demonstrated in detail below, Plaintiff's electronic tenant "ledger" and his bills reflect that Defendants was assessed and paid a $5.00 surcharge on water/sewer utility service in violation of the Water Code Statute and Rules. The surcharge for water service added by Defendants, referred to in this pleading as a "Utility Billing Service Fee," in whole or in part, violated the Water Code Statute and Rules. Plaintiff brings this action for himself and all others similarly situated to recover relief specified under this provision of the statute. Standing under Section 13.505 is conferred when the statute is violated irrespective of whether a plaintiff suffers actual damages. In this case, the moment Defendants charged Plaintiff and other members of the

---

[19] Merriam Webster defines "landlord" as follows: "(1) The owner of property leased or rented to another; (2) *a person who rents lodgings: Innkeeper*." It defines "Innkeeper" as "(1) a proprietor of an inn; (2) *a hotel manager*."

Class the prohibited Utility Billing Service Fee, the statute was violated, giving rise to statutory relief. In addition to standing conferred by the statute when an illegal utility fee is assessed, Plaintiff and each Class member paid the unlawful Utility Billing Service Fee charged by Defendants; thus standing is conferred based on both Defendants' assessment and collection of prohibited Utility Billing Service Fee.

**C.** **PLAINTIFF IS ASSESSED AND PAYS A MONTHLY $5.00 "SERVICE FEE" (THE UTILITY BILLING SERVICE FEE) FROM FROM MAY 2015 THROUGH MAY 2016 FOR WATER/SEWER BILLING; DEFENDANTS LABEL IT FIRST AS A "RENT AND TRASH BILLING" FEE AND AFTER THIS SUIT WAS FILED, AS A "PEST CONTROL AND TRASH BILLING FEE."**

40. Plaintiff is a residential tenant at Meritage at Steiner Ranch, a large apartment property owned by Steiner with 503 apartment units. Steadfast acts as the landlord at Meritage at Steiner Ranch. Steiner is the legal titleholder. The physical location of the apartment complex is 4500 Steiner Ranch Boulevard, Austin, Texas 78732. In or about June 2014 Plaintiff and his wife, Taylor McKinney, signed one of Steadfast's standard TAA form leases that included TAA addendum forms with Meritage at Steiner Ranch for a term that ended in or about May 2015. In May 2015, Plaintiff and his wife moved to a different unit at the Meritage Steiner Ranch complex, and executed a new twelve-month lease agreement, dated May 8, 2015, with a lease term of May 8, 2015 to May 7, 2016 ("Plaintiff's Lease," attached as **Ex. A**).

49. Plaintiff's Lease defines "rent" in paragraph 6. **Ex. A** at 1. Rent is paid separately by Plaintiff to Defendants by dropping off payments at the onsite management office or paying online using Defendants' payment portal on its website.[20] The lease makes this clear:

---

[20] The payment portal used to pay rent online is Defendants'; not Conservice's. Conservice does not provide any rent services to tenants It is worth noting that Defendants charge their tenants a hefty "convenience fee" of $20.00 to pay rent online. Not only is this practice illegal under Texas law, it confirms that Defendants handle their own rent payments and do not use Conservice for that service.

> 6. **Rent and Charges.** You will pay $1035.00 per month for rent, in advance and
> without demand [**check one**] [X] at the onsite manager's office [X] through our
> online payment site [Note: *both boxes are checked*]

**Ex. A** at ¶ 6). Thus, Defendants' third-party utility billing company (Conservice) has no hand whatsoever in billing for, or collecting rent.[21]

41. The term "utilities" is discussed and defined in Plaintiff's Lease to include only water/wastewater service. Paragraph 10 of Plaintiff's Lease (**Ex. A**) states: "Utility charges defined per the utility addendum will be billed each month based on the billing formula specified on the lease addendum and may vary each month" The only utility addendum attached to Plaintiff's Lease is the "Water/wastewater Submetering Addendum." Also, Paragraph 43 of Plaintiff's Lease provides a list of addenda that are attached to and made part of the lease if the boxes are checked. Only one listed addendum uses the word "utility" -- the "Utility Submetering Addendum for ☐ electric ☒ water ☐ gas." The box next to that listed addendum is checked meaning it is part of the lease. Also, only the box for "water" is checked, which establishes that the only "utilities" defined in Plaintiff's Lease are water/wastewater.

50. In separate monthly bills prepared by the third-party provider hired by Steadfast, Conservice Management & Utility Billing ("Conservice"), Plaintiff was charged for:

  a. Water Base Charge
  b. Water
  c. Sewer Base Charge
  d. Sewer
  e. Trash
  f. Pest Control
  g. Service Fee

---

[21] Defendants originally argued that the "service fee" was for "rent billing." *See* ECF 13 at 4. They now concede, through discovery responses, that they have not collected any money for "rent billing."



Sample utility bills are attached as **Ex. B**. Plaintiff has paid each of the charges and fees assessed.

51. Each month, Conservice adds to Plaintiff's utility bill a "Service Fee" of $5.00. Printed on the back of Conservice utility bill form is a purported explanation of each charge on the bill. Initially, the explanation of the "Service Fee" was: "*Rent and trash billing service fee.*"



*See* **Ex. B**, at 1. After this case was filed in August 2015, Defendants and Conservice apparently changed the language in the utility bill to state that the "Service Fee" was not for rent billing and trash, but instead for "Pest control and trash billing fee." **Ex. B,** at 2.

52. On Plaintiff's electronic ledger, generated and maintained by Defendants and produced only recently,[22] the $5.00 monthly service fee is listed month after month (from June 2015 - May 2016) as a "**Utilities Billing Service Fee** - $5.00," (**Ex. C**), evidencing that the

---

[22]Produced to Plaintiff in discovery on July 26, 2016.

service fee is for <u>all</u> "utilities" billed.[23]  And since the only true "utilities" for which Defendants bill Plaintiff and the Class are water and sewer under the express language of Plaintiff's lease form and based on industry practice, it is more probable than not that the entire Utility Billing Service Fee actually was for water and sewer service. Any effort by Defendants and their biller (Conserve) to re-label the fee for such things as "rent billing", "pest control" or  "trash administration" in utility bills sent to their apartment tenants in Texas does not change the true nature of the fee as a water billing (RUBs) surcharge. This re-labeling of RUBs surcharges and service fees in utility bills sent to Texas apartment tenants is an industry practice among large apartment owners like Defendants and their third-party utility billers.[24] It demonstrates that these companies are aware of Texas law and that the fees are unlawful in Texas even though they may be charged to tenants in other states.

53.     At a minimum, at least half of the $5.00 monthly "Utilities Billing Service Fee" (2/4ths or 50%) is attributable to water and wastewater, and at least a portion of the fee is impermissible because it is unrelated to any charge imposed by the public utility company on the landlord. The Utility Billing Service Fees, therefore, or at least 50% of the charges, refer to water and wastewater services and constitute "extra charge[es], over and above the cost per gallon and any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager." *See* TEX. WATER CODE § 13.503(b).

54.     The agreement between Steadfast and Conserve, attached as **Ex. K** and filed under seal, confirms the allegations in this complaint.[25] The agreement, in defining the

---

[23] Conserve of course has nothing to do with the labeling of the fee; the label used in the ledger is selected by Defendants.

[24] *See* n. 26, 27 *infra*.

[25] As noted previously, Steadfast has taken the position that the monthly "service fee" has nothing to do with water/wastewater billing or service, and instead is for rent billing only. As rent billing fees are not authorized under the form lease, Defendants have admitted they breached

"services" to be provided and specifying that the monthly service fees to be billed to Defendants' tenants in multiple states, including Texas, are for those "services," establishes that the fee at issue here was in fact for water RUBs billing services. And Conservice's designated representative and general counsel confirmed this fact at his deposition.[26] Deposition excerpts attached as sealed exhibit **Ex. L**.

     55.    Defendants and Conservice agreed to share the "service fee" (Utility Billing Service Fees) billed to and collected from Plaintiff and other putative Class members.[27]

     56.    Plaintiff's TAA form lease, including all form addenda attached, does not specify or otherwise authorize a monthly rent billing fee to bill Plaintiff for rent (in addition to "rent" as defined in each lease). Steadfast does not bill Plaintiff for rent. Likewise, Steadfast's third-party utility biller, Conservice, does not bill Plaintiff for rent. The summary page of Plaintiff's form lease makes no mention whatsoever of a rent billing fee either. Assuming, as Defendants have suggested in the past (but apparently not any more), the service fee is in part for "rent billing," that fee is simply created out of thin air and added to the monthly utility bill prepared by

---

[26] the Lease by adding unauthorized fees. However, in recent discovery responses Defendants now claim to have never actually charged any of the tenants at Meritage at Steiner Ranch a "rent billing" fee, and instead they now claim that the fee was for "pest control billing."

[26] The entire deposition has been designated as confidential by Conservice; therefore, it is not quoted here. On information and belief, at some or all other Steadfast apartment properties outside of Texas, tenants are billed for utilities, including water and sewer, under the same Master Utility Billing Agreement with Conservice using the same types of RUBs allocation services. Plaintiff anticipates that those tenants' utility bills reflect that the "service fee" is, in whole or in part, for water and sewer RUBs billing.

[27] How the fees are shared is set forth in **Ex. K** filed under seal. It is undisputed that Plaintiff and other tenants at Meritage at Steiner Ranch are billed for water and sewer using one of the allocated or RUBs billing methods (RUBs is an industry acronym for "ratio utility billing system") allowed by the PUC. The majority of the time and effort expended by Conservice each month to bill tenants at Meritage at Steiner Ranch tenants for utilities and other services appears to be expended on the complex task of water/sewer bill allocation and billing and water utility management. This is because the other services included in the monthly bills to tenants, pest control and trash services, neither of which is a public utility since they are provided by private vendors, are simple "flat fees" added to each bill automatically each month. Under PUC Rules, an owner may <u>not</u> assess a service fee for allocated water and sewer utility billing.

Steadfast's third-party biller (Conserve). The form lease does not purport to authorize Defendants to charge Plaintiff or the Class any fee beyond the $3.00 per month "trash billing fee" described in the form trash addendum to Plaintiff's lease. If the fee is for "rent billing" as Defendants have judicially admitted, the $2.00 "rent billing fee" is a monthly add-on to rent not authorized by the lease.

57. The Utilities Billing Service Fee was for water/wastewater billing, but not part of the water charges to Defendants from the retail provider (City of Austin). It was an added surcharge by Defendants, the exact type of fee prohibited by the Water Code Statute and Rules. Defendants were prohibited from adding surcharges for water/wastewater service, as was done here. TEX. WATER CODE § 13.503(b), 13.5031(3); 16 TEX. ADMIN. CODE §§ 24.124, 24.125(a). The $5.00 fee (or any portion of that fee) was not assessed in the first instance by a public utility, and therefore could not be collected from tenants. In assessing Plaintiff and collecting from him the $5.00 Utility Billing Service Fee (or any portion of that fee), Defendants violated the law by overcharging Plaintiff.

58. Any disclosure of the illegal fee does not make it contractually "agreed" to by Plaintiff; as noted earlier, a tenant cannot be deemed to waive his right to pursue a claim for the charge of an illegal fee. 16 TEX. ADMIN. CODE § 24.123.

59. Statewide, Defendants unlawfully assessed other class members besides Plaintiff unlawful Utility Billing Service Fees during the class period. Even if the dollar amount of the fees might have varied in amount from property to property (though that is not known to be the case), they were nevertheless unlawful under the water code statute and rules regardless of the amount.

60.    Plaintiff brings this action for himself and all others similarly situated to recover damages for Defendants' violation of the Water Code Statute and Rules. In the alternative, Plaintiff seeks to recover damages for himself and the Class resulting from breaches of Defendants' form leases in the form of excessive rent or rent billing fees not authorized under the form leases signed by Plaintiff and the Class.

**D.     PLAINTIFF IS CHARGED EXCESSIVE PEST CONTROL FEES, AND PAYS THEM**

61.    Pest control fees are a lucrative way for landlords and apartment owners to increase revenue and, to some extent, pass along costs to tenants.  By charging all or most tenants monthly pest control fees–even though actual pest treatments of tenants' apartment units occur rarely, and certainly not monthly--a landlord is able to turn pest control into a profit center. Residential landlords and property owners have a statutory obligation to provide a habitable dwelling, but it is not clear that the cost of providing such a habitable dwelling should be, or can be, passed along to tenants at apartment complexes.  However, assuming *arguendo* they can be passed along, they must be contracted for specifically in the tenant's lease agreement.  In other words, pest control fees incurred by property owners and landlords cannot be allocated and added to a tenant's utility bill as a matter of course.  Instead, pest control fees can only be charged to tenants, if at all, by specifically providing for that charge in the lease agreements and addenda in exchange for specific services or pest control obligations being undertaken by the owner. Absent lease language specifying the parties' agreement as to how pest control fees are to be allocated to tenants in exchange for specific services, there is no agreement to shift any of that cost to the tenant, and the owner/landlord must absorb those costs of providing a habitable premises as Texas law provides.

62.     Despite knowledge of how to contract for the apportionment of pest control fees, the TAA standardized form leases signed by Plaintiff and Class members during the class period omit any language authorizing pest control fees or containing a formula under which Steadfast and Steiner could or would allocate pest control fees to its tenants, as demonstrated by the lease signed by Plaintiff.   Despite this fact, Defendants have routinely charged and collected pest control fees from its Texas tenants on monthly utility bills over the past four years without any contractual or other legal basis.

63.     On his utility billing statements from June 2015 through May 2016, Plaintiff was billed $1.00 monthly for "Pest Control (Local Utility Provider)."[28]  He paid all such charges.  A sample monthly utility bill from Conserve, as Defendants' agent, containing the pest control fee is attached as **Ex. B**.  However, Plaintiff's lease did not authorize pest control fee and he never agreed to be billed for or pay separate pest control fees in addition to rent.  Equally important, Defendants did not contractually agree to provide any service in return for amount billed to Plaintiff that he paid.

64.     Likewise, Plaintiff's lease did not authorize a monthly service fee of $3.00 to bill Plaintiff a $1.00 unauthorized pest control fee either. On information and belief, Defendants are now backtracking about charging rent billing fees, and are now attempting to re-label the Utilities Billing Service Fee for water and sewer as a fee for billing Plaintiff a flat fee of 1.00 per month for pest control.  Again, Defendants' position is a moving target.

65.     Plaintiff's Lease does not authorize Defendants to charge monthly Pest Control Fees, nor does the lease provide any formula to be used to allocate such fees or costs to Plaintiff. Nonetheless, Defendants, through their third-party biller, Conserve, charged Plaintiff monthly

---

[28] The third-party biller utility bill says "*[p]est control service is provided by your local utility provider.*" Clearly that is a false statement. First of all, pest control is not a utility, and second, public utility providers do not provide pest control services to tenants. (ECF 12-2, at 3.)

Pest Control Fees adopted unilaterally by Steiner that is outside the scope and terms of the form leases.

66.     Such assessment and collection of fees violates the parties' agreement.

### III.  CLASS ACTION ALLEGATIONS

67.     As set forth below, the proposed Classes satisfy the requirements for a class action.  The charges at issue in this case, believed to have been imposed on all members of the Classes, were assessed to and collected from Plaintiff by Steadfast and Steiner. The remaining members of the Class, as defined below, are current or former residential tenants of Steadfast-managed properties in Texas.  These properties are believed to be located across Texas in major metropolitan areas.  Because Defendants use their own form leases and addendum forms, and utilizes standardized computer systems and procedures to bill and collect charges from its residential tenants in Texas, it is likely class members have suffered the same or similar harm as Plaintiff with regard to the unlawful and extra-contractual fees.

68.     Plaintiff brings the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of himself and the three classes described below:

a.      "**Water Code Class**":

All persons who, during the Class Period, were residential tenants of apartment properties in the State of Texas under written leases where Defendants, one or both, served as owner or landlord, and who were charged and paid at least one monthly Utility Billing Service Fee on their water bills for allocated water utility service.

The following persons are excluded from the Class:

(i)      persons who were not charged a Utility Billing Service Fee that exceeded the statutory permissible fee for water and wastewater;

(ii)     the judge(s) assigned to this case and his or her staff;

(iii)    governmental entities;

(iv)     Steadfast and its affiliates;

    (v)  persons adjudged to be bankrupt; and

    (vi)  persons who have previously released Steadfast and Steiner of the claims raised by this case.

  b.  **"<u>Rent Billing Fee Class</u>"** (alternative to or in addition to the Water Code Class):

    All persons who, during the class period, were residential tenants of apartment properties in the State of Texas under written leases where Steadfast served as owner, landlord or manager, and who were charged and paid a Rent Service Fee.

    The following persons are excluded from the Class:

     (i)  persons who were not charged a Utility Service Fee that exceeded the statutory permissible fee for water and wastewater;

     (ii)  the judge(s) assigned to this case and his or her staff;

     (iii)  governmental entities;

     (iv)  Steadfast and its affiliates;

     (v)  persons adjudged to be bankrupt; and

     (vi)  persons who have previously released Steadfast and Steiner of the claims raised by this case.

  c.  **"<u>Pest Control Fee Class</u>"** (alternative to or in addition to Water Code Class):

    All persons who, during the Class Period, were residential tenants of Meritage at Steiner Ranch, and who were charged and paid a Pest Control Fee or a pest service fee.

    The following persons are excluded from the Class:

     (i)  persons who were not charged a Pest Control Fee or had an express contractual provision or addendum authorizing the Pest Control Fee in an amount that did not exceed the actual charge;

     (ii)  the judge(s) assigned to this case and his or her staff;

     (iii)  governmental entities;

     (iv)  Steadfast and its affiliates;

     (v)  persons adjudged to be bankrupt; and

     (vi)  persons who have previously released Steadfast and Steiner of the claims raised by this case.

The "Class Period" for each class above means the period going back four years before this case was filed and continuing until judgment or as otherwise defined by the Court.

69.     The members of the class are ascertainable.  The fees charged by Defendants to the Class are reflected in the tenant ledgers and the bills it or its third-party biller sent Class members during the class period. The identities of class members are available and can be ascertained easily using objectively verifiable data from Defendants' electronic property management databases or those of its third-party biller.

70.     Upon information and belief, Plaintiff is a member of each Class he seeks to represent, as detailed in the factual background and the claims for relief section of this complaint. The averments of fact and questions of law are common to each Class.

71.     Each of the three classes is believed to include well several hundred or more members.  Each Class is so numerous and spread out across the State of Texas and possibly elsewhere such that joinder of all members is impracticable.

72.      This case is governed by a Texas state and accompanying regulatory rules with regard to the Water Code Class. The alternative Rent Billing Fee Class and the Pest Control Fee Class are governed by standardized form TAA lease contracts. These lease contracts are governed by Texas common law and the Texas Property Code.  The leases in question, including the addendum forms attached thereto, are common, standardized, and consistent in all material among the Class in all material respects.

73.     The averments of fact and questions of law common to the members of each Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

a.  The questions of law and fact are so uniform across each Class that there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

b.  The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

c.  The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member and not just those who can afford to bring their own actions; and

d.  Steadfast and Steiner had actual knowledge of applicable Texas law, and their own lease agreements, yet acted deliberately and intentionally in charging its tenants prohibited fees to likely add thousands of dollars to their bottom line on the backs of their tenants. Many, if not all, of the Class members may never discover Defendants' wrongful actions. Thus, in the absence of a class action, Defendants likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

74.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members of each Class. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

75.  The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts. In each case, Defendants, one or both, (i) charged Class members prohibited rent billing fees and pest control fees in violation of their form lease agreements.

76.  Plaintiff's claims are typical of the claims of the other Class members for each Class. Plaintiff was overcharges or otherwise charged impermissible fees in each instance.

77.     Plaintiff will fairly and adequately protect the interests of each Class.  Plaintiff is familiar with the basic facts underlying the Class members' claims.

78.     Plaintiff's interests do not conflict with the interests of the other Class members they seek to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.

79.     Plaintiff's counsel have experience prosecuting complex class actions.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

80.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

81.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Billing records needed to identify the members of the Class are stored in the electronic databases of Defendants or third-party utility biller, making the information relatively easy to retrieve.

82.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

83.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV. CLAIMS FOR RELIEF

84.     In each claim for relief, Plaintiff incorporates Paragraphs 1-83 by reference, and each claim for relief is asserted alternatively or cumulatively.

**A.     TEXAS WATER CODE VIOLATIONS AND VIOLATIONS OF PUC RULES**

**1.     STATUTORY VIOLATIONS**

85.     Defendants, at all Texas apartment houses where they serve or served as statutory owners (including acting as purported landlords of tenants at the apartment houses in Texas) during all or part of the class period, charged Plaintiff and the Class excessive and impermissible Utility Billing Service Fees for water and sewer utility service. Surcharges added to water bills by the statutory owner over and above what the retail utility charges the owner are inconsistent with the purpose and intent of the Water Code Statute and PUC Rules,[29] and are prohibited charges under TEX. WATER CODE §§ 13.503(b), 13.5031(3) and 16 TEX. ADMIN. CODE §§ 24.124 and 24.125(a), triggering Plaintiff's right to seek statutory relief under TEX. WATER CODE § 13.505.

86.     At all apartment properties in Texas where Defendants, one or both, as statutory owners, bill for water and sewer using one of the permissible allocation billing methods, as is the case at Meritage at Steiner Ranch, the Texas Water Code and PUC Rules prohibit Defendants from charging their tenants any Utility Billing Service Fees for water and sewer utility service.

87.     Defendants' business practices and their violations of the Texas Water Code and PUC Rules were not the result of a good faith, unintentional mistake. Plaintiff and the Class

_____

[29] 16 TEX. ADMIN. CODE § 24.121(a).

were charged excessive and improper fees as part of Defendants' systematic water/sewer utility billing practices, and their collection policies for their properties in Texas.

88. As provided by TEX. WATER CODE §13.505, Plaintiff and the Class seek recovery of statutory damages equal to three times the amount of all overcharges, a civil penalty of one month's rent for each Class member for each violation, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

## 2. UNJUST ENRICHMENT

89. Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein. Plaintiff and Water Code Class members agreed to pay to Defendants only those amounts of money that was lawfully due for water and sewer utility services. Defendants collected and retained a significant portion of the unlawful Utility Billing Service Fees they imposed on Plaintiff and the Class without disclosing that those fees were unlawful. Even worse, Defendants, with the assistance of their biller (Conservice) made an effort to conceal the unlawful fees by labeling them as fees for other services and in the process is guilty of misrepresentation and/or fraud. Defendants then collected those fees using the threat of late charges or possible eviction. Plaintiff and other Class members were put in an unfair position. As a result of such wrongful conduct, Defendants derived unjust and unfair profits by overcharging Plaintiff and the Class. Defendants' conduct in this respect is unfair, unjust, wrongful, misleading and/or fraudulent. Defendants' conduct deprived Plaintiff and the Water Code Class of their property without legal basis.

90. Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and other class members. Defendants' retention of such monies

served to benefit Defendants at the express detriment of Plaintiff and other class members. Defendants' retention of monies that should have been paid to Plaintiff and other class members under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, and dishonest in relation to Plaintiff and other class members.

91.     Plaintiff and other class members have no adequate remedy at law.  Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

### 3.     MONEY HAD AND RECEIVED

92.     Plaintiff and the Class paid unlawful Utility Billing Service Fees for water and sewer utility service.  Upon information and belief, Steadfast has a management agreement with Steiner and numerous other affiliated apartment owners to manage apartment complexes located in Texas.  Also, on information and belief, Steadfast, through itself, shell entities or other related entities, owns some of the Texas apartment properties it manages.  Upon information and belief, Steadfast has authority under its property management contracts to, among other things, (i) negotiate and execute leases on the owners' behalf; (ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for itself and the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

93.     Upon information and belief, Steadfast, as the management entity, routinely collected Utility Billing Service Fees for water and sewer utility service, placed them in designated bank accounts under its control, and on a routine basis retained a significant portion

of those funds or remitted some or all of those funds to Steiner and the property owners of other Steadfast managed properties.

94.     As a matter of equity, the illegally collected Utility Billing Service Fees for water and sewer utility service should be returned to Plaintiff and other class members. Because Steadfast acted in the capacity of an agent in the collection and distribution of the service fees and, both Steadfast and Steiner are obligated to return any such money in their possession that was taken from Plaintiff and the Water Code Class.

**B.     UNAUTHORIZED RENT BILLING FEES (ALTERNATIVE CLAIM TO WATER CODE CLAIM)**

**1.     BREACH OF CONTRACT**

95.     Alternatively, as set forth above, Defendants, one or both charged and collected from Plaintiff and the Class rent billing fees or excessive rent not authorized by the form lease agreements signed by plaintiff and the Class. The standardized TAA lease and addendum forms used by Defendants for Class members do not contractually allow Defendants to charge Plaintiff and the Class any sort of Rent Billing Fees, despite Defendants' repeated and false representations to the Court in two motions to dismiss that the $2.00 monthly billing fee is just that (and not a water/wastewater billing fee, even though the fee was charged by Defendants' third-party utility provider that does not bill or collect rent from tenants). Plaintiff and the Class seek recovery of all such fees and excessive rent assessed and collected during the class period based on breach of contract.

96.     As provided by TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq.*, Plaintiff and the Rent Billing Fee Class seek recovery of their breach of contract damages, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

### 2. **UNJUST ENRICHMENT**

97. Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein. Plaintiff and Rent Billing Fee Class members agreed to pay to Defendants only those amounts of money that was legally due. Defendants collected unauthorized rent billing fees in monthly utility billing statements sent to Plaintiff and the Class by Defendants' third-party utility biller without disclosing that the amount collected was in excess of the contractual rent actually due and owing. Defendants threatened Plaintiff and the Class with hefty late charges or possible eviction if such illegal charges were not promptly paid. Plaintiff and other class members were put in an unfair position. As a result of such wrongful conduct, Defendants derived unjust and unfair profits by overcharging Plaintiff and the Class. Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent. Defendants' conduct injured Plaintiff and the Rent Billing Fee Class by depriving them of their property without legal basis.

98. Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and other class members. Defendants' retention of such monies served to benefit Defendants at the express detriment of Plaintiff and other class members. Defendants' retention of monies that should have been paid to Plaintiff and other class members under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, and dishonest in relation to Plaintiff and other class members.

99.     Plaintiff and other class members have no adequate remedy at law.  Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

### 3.     MONEY HAD AND RECEIVED

100.     Plaintiff and the Class paid Rent Billing Fees to Defendants.  Upon information and belief, Steadfast has a management agreement with Steiner and numerous other affiliated apartment owners to manage apartment complexes located in Texas.  Also, on information and belief, Steadfast, through itself, shell entities or other related entities, owns some of the Texas apartment properties it manages.  Upon information and belief, Steadfast has authority under its property management contracts to, among other things, (i) negotiate and execute leases on the owners' behalf; (ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for itself and the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

101.     Upon information and belief, Steadfast, as the management entity, routinely collected rent billing fees and placed them in designated bank accounts under its control, and on a routine basis either retained all or part of those funds or remitted some or all of those funds to Steiner and the property owners of other Steadfast managed properties.

102.     As a matter of equity, the wrongfully collected Rent Billing Fees should be returned to Plaintiff and other class members.  Because Steadfast acted in the capacity of an agent in the collection and distribution of the rent service fees and pest control fees, both

Steadfast and Steiner are obligated to return any such money in their possession that was taken from Plaintiff and the Pest Control Fee Class.

## C. PEST CONTROL FEES

### 1. BREACH OF CONTRACT

103.   As set forth above, Steiner allocated, charged and collected from Plaintiff and the Pest Control Fee Class impermissible monthly Pest Control Fees not authorized by the form lease agreements using an allocation formula not provided for or even mentioned in the Class members' leases. The standardized TAA lease and addendum forms used by Steiner for Pest Control Fee Class members do not contractually allow Steiner to charge Pest Control Fees or allocate pest control costs to Class members, and to collect the same from Class members, including Plaintiff.  Plaintiff and the Class seek recovery of assessed and collected Pest Control Fees during the class period based on breach of contract.

104.   As provided by TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq.*, Plaintiff and the Pest Control Fee Class seek recovery of their breach of contract damages, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

### 2. UNJUST ENRICHMENT

105.   Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein.  Plaintiff and Pest Control Fee Class members agreed to pay to Steiner and Steadfast only those amounts of money that was legally due.  Defendants collected payments without disclosing that the amount collected was in excess of the contractual legal maximum. Defendants threatened Plaintiff and the Class with hefty late charges or possible eviction if such charges were not promptly paid.   Because Defendants never disclosed to Plaintiff material

information regarding the legal maximum charge, Plaintiff was put in an unfair position. As a result of such wrongful conduct, Defendants derived unjust and unfair profits by overcharging Plaintiff and the class. Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent. Defendants' conduct injured Plaintiff and the Pest Control Fee Class by depriving them of their property without legal basis.

106. Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and the Pest Control Fee Class. Defendants' retention of such monies served to benefit Defendants at the express detriment of Plaintiff and Pest Control Fee Class. Defendants' retention of monies that should have been paid to Plaintiff and Pest Control Fee Class under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, and dishonest in relation to Plaintiff and the Pest Control Fee Class.

107. Plaintiff has no adequate remedy at law. Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

**3.**     **MONEY HAD AND RECEIVED**

108. Plaintiff paid Pest Control Fees to Steiner and Steadfast. Upon information and belief, Steadfast has a management agreement with Steiner and numerous other affiliated apartment owners to manage apartment complexes located in Texas. Also, on information and belief, Steadfast, through itself or related parties, owns some of the Texas apartment properties it manages. Upon information and belief, Steadfast has authority under its property management contracts to, among other things, (i) negotiate and execute leases on the owners' behalf;

(ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for itself and the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

109.    Upon information and belief, Steadfast, as the management entity, routinely collected pest control fees and placed them in designated bank accounts under its control, and on a routine basis either retained all or part of those funds or remitted some or all of those funds to Steiner and the property owners of other Steadfast managed properties.

110.    As a matter of equity, the illegally collected Pest Control Fees should be returned to Plaintiff and the Pest Control Fee Class.  Because Steadfast acted in the capacity of an agent in the collection and distribution of the pest control fees, both Steadfast and Steiner are obligated to return any such money in their possession that was taken from Plaintiff and the Pest Control Fee Class.

## V.  JURY DEMAND

111.    Plaintiff previously has asserted his right to a jury trial under the Seventh Amendment to the U.S. Constitution and demands, in accordance with FED. R. CIV. P. 38, a trial by jury on all disputed material fact issues.

## VI.  REQUEST FOR RELIEF

112.    Plaintiff seeks an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and upon final hearing that the Court enter a judgment against Defendants as follows: (a) for the Water Code Class: (i) statutory damages equal to three times the amount of all statutorily prohibited fees and surcharges charged to the Class by Defendants; (ii) statutory penalties equal to one month's rent for each class member for

each statutory violation; (iii) reasonable attorney fees; (iv) court costs; and (v) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to unjust enrichment relief, and relief under the doctrine of money had and received; (b) for the alternative Rent Billing Fee Class: (i) compensatory damages based on breach of contract; (ii) prejudgment and post judgment interest at the highest rate allowed by law; (iii) reasonable attorney fees; (iv) court costs; and (v) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to unjust enrichment relief, and relief under the doctrine of money had and received; and (c) for the alternative, or in addition, Pest Control Fee Class: (i) compensatory damages based on breach of contract; (ii) prejudgment and post judgment interest at the highest rate allowed by law; (iii) reasonable attorney fees; (iv) court costs; and (v) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to unjust enrichment relief, and relief under the doctrine of money had and received .

Respectfully submitted,

By: */S/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Fax

R. MARTIN WEBER, JR.
Texas Bar No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
 (713) 651-1771 – Telephone
 (713) 651-1775 – Fax

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Fax

RUSSELL S. POST
State Bar No. 00797258
KARSON THOMPSON
State Bar No. 24083966
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010
rpost@beckredden.com
wpeterson@beckredden.com
(713) 951-3700 – Telephone
(713) 951-3720 – Fax

***ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing service pursuant to the Federal Rules of Civil Procedure on September 9, 2016.

_/s/ Britton D. Monts_
BRITTON D. MONTS

## APPENDIX 1

| | |
|---|---|
| Club at Summer Valley | Austin, Texas |
| Meritage at Steiner Ranch | Austin, Texas |
| Montecito | Austin, Texas |
| Terrace Cove Apartments | Austin, Texas |
| Trails at Buda Ranch | Buda, Texas |
| Arbors of Carrollton | Carrollton, Texas |
| Dawntree | Carrollton, Texas |
| Carrington Park at Huffmeister | Cypress, Texas |
| Waterford Place at Riata Ranch | Cypress, Texas |
| Mapleshade Park | Dallas, Texas |
| The Hills at Fair Oaks | Fair Oaks, Texas |
| The Belmont | Grand Prairie, Texas |
| Carrington Champion Forest | Houston, Texas |
| Carrington Place Luxury Apartments | Houston, Texas |
| Nob Hill | Houston, Texas |
| The Heights at 2121 | Houston, Texas |
| The Terraces on Brompton | Houston, Texas |
| Villas at Huffmeister | Houston, Texas |
| Echo at Katy Ranch | Katy, Texas |
| Villas of Kingwood | Kingwood, Texas |
| The Landing at Mansfield | Mansfield, Texas |
| Heritage Grand at Sienna Plantation | Missouri City, Texas |
| Grayson Ridge | North Richland Hills, Texas |
| Waterford on the Meadow | Plano, Texas |
| Montelena | Round Rock, Texas |
| Ashley Oaks | San Antonio, Texas |
| Rosemont at Olmos Park | San Antonio, Texas |
| Springmarc | San Marcos, Texas |

*See* http://www.steadfastliving.com/communities/?filter=city&state=texas.